**Don NIXON, Plaintiff and Appellant,**

v.

**SALT LAKE CITY CORPORATION, Defendant and Appellee.**

No. 940145.

Supreme Court of Utah.

July 7, 1995.

Stephen R. Randle, Salt Lake City, for plaintiff.

Roger H. Bullock, Salt Lake City, for defendant.

Jack C. Helgesen, Edward B. Havas, Salt Lake City, for amicus Utah Trial Lawyers Ass'n.

ZIMMERMAN, Chief Justice:

Plaintiff Don Nixon appeals from a post-verdict judgment of the Third District Court denying him any recovery in his personal-injury action brought against Salt Lake City Corporation ("SLC"). At the conclusion of the trial, the jury apportioned the relative fault for Nixon's injuries as follows: Nixon, 42%; defendant SLC, 29%; and Calhoun Maintenance of Utah, Inc. ("Calhoun"), Nixon's employer, 29%. Nixon's employer was on the special verdict form only for the purpose of apportioning fault for the injury, as it was immune from suit under section 35-1-60 of the Utah Workers' Compensation Act. *See Sullivan v. Scoular Grain Co. of Utah,* 853 P.2d 877, 878 (Utah 1993) (holding that "jury [must] account for the relative proportion of fault of a plaintiff's employer that may have caused or contributed to an accident, even though the employer is immune from suit"); *Dahl v. Kerbs Constr. Corp.,* 853 P.2d 887, 888 (Utah 1993) (same). The district court concluded that because of the jury's finding that Nixon's fault exceeded the fault of SLC, Nixon could not recover under sections 78-27-37(1) and 78-27-38 of the Utah Liability Reform Act ("LRA").[1] We reverse.

---

1. The legislature amended the LRA in 1994 in response to our decision in *Sullivan v. Scoular Grain Co. of Utah,* 853 P.2d 877 (Utah 1993). Workers' Compensation and Liability Reform Act

The relevant facts are undisputed. Nixon commenced this action on January 23, 1991, to recover damages for injuries he sustained while employed by Calhoun to perform janitorial services at the Salt Lake City Airport. The airport is owned and operated by SLC, the defendant in this action.

In October of 1988, SLC entered into a contract with Calhoun under which Calhoun agreed to provide janitorial services at the airport, using equipment owned and maintained by SLC. Under the terms of the contract, SLC was obligated to keep the janitorial equipment in good operating condition at all times.

Nixon injured his shoulders while operating a large battery-powered floor scrubber owned by SLC. Nixon's injuries required surgery on both shoulders and caused permanent pain and permanent partial disability that has affected his ability to work. He sued third party SLC but was precluded from suing his employer by the provisions of the Utah Workers' Compensation Act.

At trial, Nixon presented evidence that his injuries were caused by the negligence of SLC employees who were obligated to maintain the scrubbers but who failed to implement a program of regular battery maintenance. Specifically, for some period prior to Nixon's injuries, the SLC employees failed to open the battery cells daily to check the fluid level in the batteries and failed to test the battery fluid on a regular schedule with a hydrometer, as was recommended in the operating instructions. Nixon also presented evidence that SLC employees were negligent with respect to the scrubber in other particulars not related to the daily inspection of the battery fluid.

For its part, SLC presented evidence that Nixon and Calhoun were negligent and therefore responsible for Nixon's injuries. Specifically, SLC asserted that Nixon misused the scrubber by trying to push it by hand, in direct contradiction of the operating instructions. SLC also presented evidence that Calhoun had failed to provide for Nixon's safety in various particulars.

Anticipating that this was a case where a significant amount of fault might be assigned by the jury to both Nixon and his immune employer, Calhoun, the parties each submitted proposed comparative negligence instructions. Contending that the issues of comparative negligence and combined fault had been settled in this court's decision in *Sullivan,* Nixon proposed an instruction that would have barred Nixon from recovering against SLC only if his negligence was greater than that of SLC and of Calhoun. The instruction read as follows:

A Plaintiff[ ] whose negligence is less than 50% of the total negligence causing the Plaintiff's injuries[ ] may still recover compensation, but the amount will be reduced by the combined percentage of the Plaintiff's negligence and any negligence of Calhoun. If the Plaintiff's negligence is equal to or greater than the combined negligence of the Defendant and Calhoun, then Plaintiff may recover nothing. For example, if you find the Plaintiff's negligence was 30% of all negligence causing the injuries, and Calhoun's negligence was 10% of all negligence, then the Plaintiff's recovery will be reduced by 40%. On the other hand, if you find the Plaintiff's negligence is 50% or greater, then the Plaintiff will recover nothing.

SLC disagreed with Nixon's contention that he was entitled to recover as long as his negligence was less than the combined negligence of SLC and Calhoun. Instead, SLC asserted that the district court should instruct the jury that Nixon would recover only if his negligence was less than that of SLC. The instruction read as follows:

A plaintiff who is negligent may still recover compensation, but the amount of compensation will be limited to the percentage of negligence found against the defendant. However, if the plaintiff's comparative negligence is equal to or greater than the percentage of negligence of the defendant, then the plaintiff may recover nothing.

The district court agreed with SLC and gave its proposed instruction. After deliber-

Amendments, ch. 221, §§ 2, 3, 1994 Utah Laws 1021, 1022. Because Nixon was injured in 1988, the preamendment version of the LRA applies here.

ation, the jury returned a special verdict finding that Nixon was 42% at fault, SLC was 29% at fault, and Calhoun was 29% at fault. Acting in conformity with its earlier legal ruling on the jury instruction, the district court entered a judgment denying Nixon any recovery. The ruling stated:

> And it appearing that [Calhoun] was the employer of [Nixon], and was not joined as a defendant on any claim of liability, but was included on the verdict so that its negligence, if any, could be compared by the jury; and it further appearing that the fault of [Nixon] exceeded the fault of [SLC] thereby precluding his recovery from [SLC] under the terms of Utah Code Ann. § 78–27–38,
>
> NOW, THEREFORE, IT IS ORDERED[,] ADJUDGED AND DECREED that [SLC] does have and recover judgment against [Nixon] on [Nixon's] complaint, no cause of action, together with costs.

Nixon appeals.

SLC asks this court to affirm on the basis of the plain language of sections 78–27–37(1) and –38 of the LRA. The LRA provides: "The fault of a person seeking recovery shall not alone bar recovery by that person. He may recover from any defendant or group of defendants whose fault exceeds his own." Utah Code Ann. § 78–27–38 (1992). It further defines defendant as "any person not immune from suit who is claimed to be liable because of fault to any person seeking recovery." *Id.* § 78–27–37(1) (1992). SLC argues that it is the only "defendant" in this action because Calhoun, an immune employer, does not meet the definition set out in section 78–27–37(1). Thus, SLC asserts that Nixon cannot recover because his fault exceeded that of SLC, the only defendant in this suit.

In response, Nixon and amicus curiae Utah Trial Lawyers Association assert that the LRA must be read in light of this court's opinion in *Sullivan.* In *Sullivan,* we examined whether a jury could apportion the fault of a plaintiff's employer that caused or contributed to the accident although the employer, because it was immune from suit under the Utah Workers' Compensation Act, did not meet the traditional definition of "defen-

dant" set out in the LRA. 853 P.2d at 878. We answered the question in the affirmative, even though reading section 78–27–37(1) isolated from the rest of the statute might have dictated a different result. *Id.* at 878–79.

■ We first state the appropriate standard of review. The proper construction of the LRA is a question of law. *See State v. Larsen,* 865 P.2d 1355, 1357 (Utah 1993); *State v. James,* 819 P.2d 781, 796 (Utah 1991). "Accordingly, we grant no particular deference to the district court's rulings but review them for correctness." *World Peace Movement of Am. v. Newspaper Agency Corp.,* 879 P.2d 253, 259 (Utah 1994); *accord Ward v. Richfield City,* 798 P.2d 757, 759 (Utah 1990).

■ " 'The primary rule of statutory interpretation is to give effect to the intent of the legislature in light of the purpose the statute was meant to achieve.' " *Sullivan,* 853 P.2d at 880 (quoting *Reeves v. Gentile,* 813 P.2d 111, 115 (Utah 1991)). Although we generally rely on the plain language rule of statutory construction, *id.* at 879, we note that an equally important rule of statutory construction is that a statute should be construed as a whole, with all of its provisions construed to be harmonious with each other and with the overall legislative objective of the statute. *Utah State Road Comm'n v. Friberg,* 687 P.2d 821, 831 (Utah 1984); *see also Reagan Outdoor Advertising, Inc. v. Utah Dep't of Transp.,* 589 P.2d 782, 783 (Utah 1979). This is especially true where we are interpreting an ambiguous statute. *Sullivan,* 853 P.2d at 880.

We begin by noting that we are not interpreting the LRA against a blank slate. In *Sullivan,* this court approved the practice of apportioning fault to immune employers, even though they do not meet the definition of "defendant" set out in section 78–27–37(1). Because we are obligated to construe the LRA in a manner that is in harmony with our *Sullivan* decision, we discuss that case in some detail below.

The plaintiff in *Sullivan* argued, citing the language of section 78–27–37(1) of the LRA, that it was improper for the jury to consider and apportion the fault of a statutorily im-

mune employer. In support of his argument, the plaintiff relied on the following two provisions of the LRA: (i) section 78–27–39, which provides that a jury may be instructed "to find separate special verdicts determining the total amount of damages sustained and the percentage or proportion of fault attributable to each person seeking recovery *and to each defendant*" (emphasis added); and (ii) section 78–27–37(1), which defines "defendant" as "any person not immune from suit who is claimed to be liable because of fault." Although we recognized that "the best evidence of legislative intent is the plain language of the statute," *id.* at 879, we concluded that excluding immune employers from the apportionment process would directly conflict with other language of the LRA which requires that no defendant be held liable for damages in excess of its proportion of fault. *Id.* (citing Utah Code Ann. §§ 78–276–38, –40 (1992)). In light of the ambiguity created by this conflict between different statutory provisions, we examined the overall purpose and intent of the LRA and concluded that "failing to include immune employers in the apportionment violates the main purpose of the [LRA] by improperly subjecting the remaining defendants to liability in excess of their proportion of fault." *Id.* at 880.

SLC makes the same argument as did the plaintiff in *Sullivan.* SLC argues that since Calhoun is immune from suit and section 78–27–37(1) defines defendant as any person not immune from suit, section 78–27–38's requirement to compare the fault of plaintiffs and defendants precludes consideration of Calhoun's fault in the·comparison. In so arguing, SLC fails to recognize the import of *Sullivan.* In *Sullivan,* we specifically rejected a literal reading of the term "defendant" because such a reading conflicted with other provisions of the Act and with the overall intent and purpose of the LRA. We cannot now return to a rigid and isolated reading of the term "defendant" without doing significant damage to the scheme we set out in *Sullivan. See Curtis v. Harmon Elec., Inc.,* 575 P.2d 1044, 1046 (Utah 1978) (noting presumption that statutes are not intended to produce undesirable or inequitable consequences).

■ Reading the LRA against the backdrop of *Sullivan,* we conclude that a plaintiff may recover as long as the plaintiff's fault is less than the combined fault of all others that contributed to the injury. It makes no sense to adopt an expansive definition of the term "defendant" for the purpose of apportioning fault under sections 78–27–38 and –40 of the LRA, while giving that same term a rigid reading for the purpose of determining whether the fault of any defendant or·group of defendants exceeded the fault of the plaintiff. *See Grayson Roper Ltd. Partnership v. Finlinson,* 782 P.2d 467, 471–72 (Utah 1989) (indicating that "terms of related code provisions should be construed in a harmonious fashion"); *State v. Oehlerking,* 147 Ariz. 266, 709 P.2d 900, 902 (Ct.App.1985) ("Where the same words or phrases appear in the same statute, they should be given a consistent meaning unless there is a clearly expressed legislative intent to the contrary.").

We find support for our conclusion in the 1994 amendments to the LRA. In response to our decision in *Sullivan,* the˜legislature made explicit what we had found to be implicit in the LRA. The legislature amended section 78–27–38,˙the specific provision at issue in *Sullivan,* to read as follows:

> In determining the proportionate fault attributable to each defendant, the fact finder may, and when requested by a party shall, consider the conduct of any person who contributed to the alleged injury regardless of whether the person is a person immune from suit ...· and may allocate fault to each person seeking recovery, to each defendant, and to any person immune from suit who contributed to the alleged injury.

Workers' Compensation and Liability Reform Act Amendments, ch. 221, § 3, 1994 Utah Laws 1021, 1022. In addition, the legislature amended a separate subsection of section 78–27–38, the section specifically relevant to the case before us, to read as follows:

> A person seeking recovery may recover from any defendant or group of defendants whose fault, combined with the fault of persons immune from suit, exceeds the fault of the person seeking recovery....

*Id.* Taken together, these technical corrections indicate that the legislature approved of the interpretation we gave the LRA in *Sullivan*, and believed that the LRA contemplated the consideration of the fault of immune parties both in apportioning fault and in determining whether the fault of the plaintiff exceeded the fault of all individuals that contributed to the injury.

■ We conclude that the LRA contemplates the consideration of the fault of immune parties in determining whether a plaintiff is entitled to recover under section 78–27–38 of the LRA.[2]

Citing *Dixon v. Stewart*, 658 P.2d 591 (Utah 1982), SLC argues that it is entitled to a new trial if we reverse the judgment of the district court. In *Dixon*, we held that the jury should be told the effect of its verdict in answering special interrogatories. *Id.* at 596–97. For example, if requested, a trial court must inform the jury that a plaintiff will not recover if the jury attributes more than 50% of the fault to that plaintiff. *Id.* at 596.

■ According to SLC, it is entitled to a new trial if we reverse because the jury would have been misinformed as to the effect of attributing fault among Nixon, SLC, and Calhoun. We find this argument ironic in light of the fact that SLC is in the position of objecting to its own requested jury instruction given over Nixon's objection. *See State v. Dunn*, 850 P.2d 1201, 1220 (Utah 1993) (holding that "a party cannot take advantage of an error committed at trial when that party led the trial court into committing the error"); *Ludlow v. Colorado Animal By-Products Co.*, 137 P.2d 347, 354 (Utah 1943) ("A party who takes a position which either leads a court into error or by conduct approves the error committed by the court, cannot later take advantage of such error in procedure."). Because SLC requested the jury instruction at issue and because SLC has made no attempt to demonstrate that there was a reasonable likelihood of a more

favorable verdict to SLC absent the error, Utah R.Civ.P. 61, we decline to order a new trial.

SLC also argues that it is entitled to a new trial should we reverse because the trial court failed to rule on a motion relating to, and to instruct the jury regarding, governmental immunity. In arguing that at least some of its actions were immune, SLC relies on section 63–30–10(4) of the Utah Code, which provides as follows:

> Immunity from suit of all governmental entities is waived for injury proximately caused by a negligent act or omission of an employee committed within the scope of employment except if the injury arises out of:
>
> . . .;
>
> (4) a failure to make an inspection or by making an inadequate or negligent inspection.

■ SLC asserts that its failure to maintain the scrubbers in proper working order was, at least in part, attributable to inadequate or negligent inspection as that term is used in section 63–30–10(4). We disagree. We conclude that as a matter of law, the acts complained of are acts of maintenance rather than acts of inspection. As we indicated in *Ericksen v. Salt Lake City Corp.*, 858 P.2d 995 (Utah 1993), "[T]he question of whether a governmental entity is liable for the negligent inspection of property most frequently arises when the entity undertakes inspections to assure compliance with building, fire, electric and other safety codes." *Id.* at 997 (citing 57A Am.Jur.2d *Negligence* § 376 (1989)). We went on to note:

> [W]e believe that the legislature intended to preserve a narrow immunity for inspections to allow inspectors to perform their work without fear that an oversight which later causes injury would give rise to liability on the part of a governmental entity. The conclusions and results of the inspection are not to be second-guessed by courts and juries. One court has "recog-

---

**2.** We note that adding an immune employer's fault to that of the defendant does not impair any of the LRA's objectives. It does not, for example, create liability in the immune employer. *Sullivan*, 853 P.2d at 881. Nor does it create addi-

tional liability for the defendant, whose responsibility to answer in damages is still limited to its proportionate share of fault. Utah Code Ann. § 78–27–40 (1992).

nized that regulatory activities which are engaged in for the benefit of the public generally would be discouraged by the imposition of civil tort liability, and that this is not in the public interests."

*Id.* at 998 (quoting *Garry v. Payne*, 224 N.J.Super. 729, 541 A.2d 293, 297 (App.Div. 1988)); *see also Gillman v. Department of Fin. Insts.*, 782 P.2d 506, 512–13 (Utah 1989) (noting policy behind immunity from suit for negligent inspections is to insure that government is free to undertake those functions necessary to protect *public* health and safety).

As should be clear, the activities at question here do not fall into the "narrow immunity for inspections" set out in section 63–30–10(4). This is not a case where an inspector failed to determine that a particular building or piece of equipment was unsafe for the public as a whole. Instead, SLC employees failed to perform routine maintenance on a floor scrubber and thereby injured a custodian. See generally 57A Am.Jur.2d *Negligence* § 376 (1989), stating that immunity for negligent inspection developed from "public duty doctrine" and that public duty doctrine "operates to disallow recovery by individuals for such inspections on the ground that the [inspection] was intended to protect the general public, and to provide a means of enforcing a third party's duty to repair defects, rather than to protect a particular individual or class of individuals." Because the actions at issue here were not an inspection, the trial court did not err in refusing to give an instruction to that effect, and SLC is not entitled to a new trial on that ground.

The judgment of the district court is reversed and the case is remanded for entry of judgment in conformity with this opinion.

STEWART, Associate C.J., and HOWE, DURHAM and RUSSON, JJ., concur.