Kenneth Ray SULLIVAN, Plaintiff,

v.

SCOULAR GRAIN COMPANY OF UTAH; Union Pacific Railroad Company, a Utah corporation; Scoular Grain Company, The Scoular Company, Robert O'Block, and Gordon Olch, dba Freeport Center Associates; Trackmobile, Inc., a Georgia corporation, formerly known as Whiting Corp.; The Denver and Rio Grande Western Railroad Company, a Delaware corporation; Oregon Short Line Railroad Company, a Utah corporation; Utah Power & Light Company, a Utah corporation; and G.W. Van Keppel Company, a Missouri corporation, Defendants.

No. 910482.

Supreme Court of Utah.

April 22, 1993.

Rehearing Denied June 11, 1993.

See also 930 F.2d 798.

M. Douglas Bayly, L. Rich Humpherys, Salt Lake City, for Sullivan.

Paul M. Belnap, Victoria K. Kidman, Salt Lake City, for Trackmobile, Inc.

D. Gary Christian, Michael F. Skolnick, Salt Lake City, for G.W. Van Keppel Co.

J. Clare Williams, Salt Lake City, for Oregon Short Line R.R. and Union Pacific R.R.

H. James Clegg, Salt Lake City, for Utah Power and Light.

DURHAM, Justice:

This case comes to us pursuant to rule 41 of the Utah Rules of Appellate Procedure as a question certified from the United States District Court for the District of Utah. Two issues have been accepted on certification:

1. Under the Utah Comparative Fault Act,[1] Utah Code Annot. § 78–27–38, et seq., can a jury apportion the fault of the plaintiff's employers that caused or contributed to the accident although said employers are immune from suit under Utah Workers' Compensation Act, Utah Code Ann. § 35–1–60, et seq.

2. Under the Utah Comparative Fault Act, Utah Code Ann. § 78–27–38, et seq., can a jury apportion the fault of an individual or entity that has been dismissed from the litigation but against whom it is claimed that they have caused or contributed to the accident.[2]

■ We hold that the purpose and intent of the Utah Liability Reform Act require that a jury account for the relative proportion of fault of a plaintiff's employer that may have caused or contributed to an accident, even though the employer is immune from suit. Apportionment of fault does not of itself subject the employer to civil liability. Rather, the apportionment process merely ensures that no defendant is held liable to any claimant for an amount of damages in excess of the percentage of fault attributable to that defendant.

■ We also hold that an individual or entity dismissed from a case pursuant to an adjudication on the merits of the liability issue may not be included in the apportionment.[3] When a defendant is dismissed due to a determination of lack of fault as a matter of law, the defendant's exclusion from apportionment does not subject the remaining defendants to liability for damages in excess of their proportionate fault.

The following facts are taken from the federal district court's certification order. In October 1986, plaintiff Kenneth Sullivan lost his left arm and left leg in an accident on the railroad tracks at the Freeport Center in Clearfield, Utah. At the time of his injury, Sullivan was assigned to unload grain from rail cars into warehouses. He was employed by Scoular Grain Company, Freeport Center Associates, and Scoular Grain Company of Utah ("the Scoular parties").

Sullivan filed this action against the Scoular parties, Union Pacific Railroad Company, Denver & Rio Grande Western Railroad Company, Oregon Short Line Railroad Company, Utah Power & Light Company, Trackmobile, Inc., and G.W. Van Keppel Company. In 1989, the federal district court found the Scoular parties immune from plaintiff's claim under the exclusive remedy provision of Utah's Workers' Compensation Law and dismissed them from the action. That court also found that defendant Denver & Rio Grande Western Railroad had no legal duty to Sullivan

---

1. These issues are reproduced exactly as certified by the United States District Court. However, "Utah Comparative Fault Act" is not the official name of the act cited here. In 1986, the Utah Legislature repealed what was the Comparative Negligence Act and enacted the present Liability Reform Act. 1986 Utah Laws ch. 199.

2. These are issues of first impression in Utah. Defendant Trackmobile cited three Utah cases in support of the merits of its motion to apportion fault. We do not address those cases because they were decided before the enactment of the statute at issue and are not dispositive of any question now before the court.

3. We do not decide whether a jury may apportion the fault of persons who are not parties in an action for reasons other than dismissal on the merits. The question may arise when potentially liable persons are excluded from an action due to, for example, failure of service of process, settlement, a covenant not to sue, a plaintiff's failure to join a party, an applicable statute of limitations, or some other affirmative defense.

and dismissed it from the lawsuit. The remaining defendants in the case are Utah Power & Light, Trackmobile, G.W. Van Keppel, Union Pacific Railroad, and Oregon Short Line Railroad. A motion to dismiss Utah Power & Light for lack of jurisdiction is pending at this time.

Defendant Trackmobile moved to have the jury apportion and compare the fault of all the originally named defendants, whether dismissed or present at trial. Plaintiff opposed this motion, claiming that only the fault of parties who are defendants at trial may be compared.

## I. IMMUNE EMPLOYERS

### A. Statutory Interpretation

■ The court's principal duty in interpreting statutes is to determine legislative intent, and the best evidence of legislative intent is the plain language of the statute. *Jensen v. Intermountain Health Care, Inc.*, 679 P.2d 903, 906 (Utah 1984).

Plaintiff argues that his former employers must be excluded from the apportionment process because they are not "defendants" under the Liability Reform Act's definition. Section 68–3–11 of the Utah Code states that "words and phrases ... [which] are defined by statute, are to be construed according to such peculiar and appropriate meaning or definition." Under section 78–27–39 of the Liability Reform Act, a jury may be instructed "to find separate special verdicts determining the total amount of damages sustained and the percentage or proportion of fault attributable to each person seeking recovery and to each defendant." Section 78–27–37(1) defines "defendant" as "any person *not immune from suit* who is claimed to be liable because of fault to any person seeking recovery." (Emphasis added.) Therefore, plaintiff argues, because the district court found the Scoular parties to be "immune from suit" under the exclusive remedy provision of Utah Workers' Compensation Act,

Utah Code Ann. § 35–1–60, they are not defendants and are excluded from apportionment under the plain language of the Act.

Excluding plaintiff's employers from the apportionment process, however, would directly conflict with the language of other sections of the Act which require that no defendant be held liable for damages in excess of its proportion of fault.[4] The relevant portions of sections 78–27–38 and –40 read as follows:

**78–27–38. Comparative negligence.** The fault of a person seeking recovery shall not alone bar recovery by that person. He may recover from any defendant or group of defendants whose fault exceeds his own. However, *no defendant is liable to any person seeking recovery for any amount in excess of the proportion of fault attributable to that defendant.*

**78–27–40. Amount of liability limited to proportion of fault—No contribution.** Subject to Section 78–27–38, *the maximum amount for which a defendant may be liable to any person seeking recovery is that percentage or proportion of the damages equivalent to the percentage or proportion of fault attributed to that defendant.* No defendant is entitled to contribution from any other person.

(Emphasis added.) If the Scoular parties, who allegedly contributed to the accident, are not included on the special verdict form, the remaining defendants will be potentially liable to plaintiff for an amount in excess of their proportion of fault. For example, if the Scoular parties were 90% at fault and the defendants remaining in the action were 10% at fault, the remaining defendants would be apportioned 100% of any damages awarded even though they were only 10% at fault.[5] Such a result would violate the plain language of sections 78–27–38 and –40.

---

4. This is true except in those cases in which an employer did not cause or contribute to the employee's injury.

5. The percentages used here are merely for purposes of illustration and do not reflect any factual determination of the actual fault of the parties involved.

Thus, we are faced with two arguably contradictory statutes within the same article. Section 78–27–37 defines "defendant" in a way that appears to preclude the inclusion of an employer from apportionment. But excluding employers from apportionment would violate the mandate of section 78–27–40 that no defendant be held liable for damages greater than its proportion of fault. This conflict creates an ambiguity that requires the court to make a policy inference as to the overall purpose and intent of the Act.

### B. Legislative History

■ "When interpreting an ambiguous statute, we first try to discover the underlying intent of the legislature, guided by the purpose of the statute as a whole and the legislative history." *Hansen v. Salt Lake County*, 794 P.2d 838, 841 (Utah 1990) (citations omitted). We then try to harmonize ambiguous provisions accordingly. *Clover v. Snowbird Ski Resort*, 808 P.2d 1037, 1045 (Utah 1991).

In the 1986 session of the Utah Legislature, Substitute Senate Bill No. 64 proposed that a jury may determine the "total amount of damages sustained and a percentage or proportion of fault attributable to each person seeking recovery, to each defendant, *and to each other person whose fault contributed to the injury or damages.*" (Emphasis added.) Before being enacted, the bill was amended by deleting the part emphasized above and inserting the word "and" before "to each defendant." The result is codified at Utah Code Ann. § 78–27–39:

> The trial court may, and when requested by any party shall, direct the jury, if any, to find separate special verdicts determining the total amount of damages sustained and the percentage or proportion of fault attributable to each person seeking recovery and to each defendant.

Sullivan argues that this amendment shows that the legislature did not intend to include nonparties in the apportionment process.

Trackmobile counters that the *reason* for the amendment is not clear and argues

that, by contrast, the intent of the comparative negligence statute to limit a defendant's liability to his or her proportion of fault *is* clear. That purpose is to ensure that "no defendant is liable to any person seeking recovery for any amount in excess of the proportion of fault attributable to that defendant." Utah Code Ann. § 78–27–38.

"The primary rule of statutory interpretation is to give effect to the intent of the legislature in light of the purpose the statute was meant to achieve." *Reeves v. Gentile*, 813 P.2d 111, 115 (Utah 1991) (footnote omitted). Thus, failing to include immune employers in the apportionment violates the main purpose of the Act by improperly subjecting the remaining defendants to liability in excess of their proportion of fault.

Other portions of the Act's history support this conclusion. First, during a floor debate prior to the adoption of the bill, one senator observed that "it is the basic fairness concept we're driving at. The defendant ought to be on the hook only for its own percentage of damages, but ought not be the guarantor for everyone else's damages." Floor Debate, Utah Senate, 46th Leg. 1986, General Sess., Senate Day 31, Records No. 63 (Feb. 12, 1986). Second, each preliminary draft of Senate Bill 64 states in the title that the purpose of the Act was, among other things, "abolishing joint and several liability." If the jury is prevented in this case from considering the relative fault of the Scoular parties in the apportionment process, Trackmobile and the other defendants will be held liable in the event of a verdict for plaintiff, not only for their own proportionate share of fault, but also for the proportionate share of fault attributable to the Scoular parties. Thus, one of the major evils of joint and several liability would result, and the stated purpose of the legislature in abolishing it would be frustrated.

This interpretation of the Liability Reform Act is in harmony with the Workers' Compensation Act; "when a construction of an act will bring it into serious conflict with another act," we have a duty to "construe the acts to be in harmony and to

avoid conflicts." *Jerz v. Salt Lake County*, 822 P.2d 770, 773 (Utah 1991) (citations omitted). The Workers' Compensation Act provides an injured employee's "exclusive remedy" against an employer in place of any other "civil liability" and provides that no "action at law" may be maintained against an employer based on any injury to an employee. Utah Code Ann. § 35–1–60. In our view, this exclusive remedy does not bar the Scoular parties from the apportionment process because apportionment is not an action at law and would not impose any civil liability on the Scoular parties. Thus, the jury should consider acts or omissions by the Scoular parties in its liability deliberations.

Plaintiff's concerns about procedural problems with apportionment are not persuasive. We believe that employers are not prejudiced by being included in the apportionment process for three reasons. First, employers have a financial interest in the outcome of the action. The Workers' Compensation Act provides, "The person liable for compensation payments shall be reimbursed in full for all payments made [by the third-party defendant to the injured employee] less the proportionate share of costs and attorneys' fees...." *Id.* § 35–1–62(2).

Second, the Workers' Compensation Act expressly provides employers (or their insurance carriers) notice and a reasonable opportunity to appear in the action. The Utah Workers' Compensation Act provides:

> Before proceeding against the third party, the injured employee, or, in case of death, his heirs, shall give written notice of such intention to the carrier or other person obligated for the compensation payments, in order to give such person a reasonable opportunity to enter an appearance in the proceeding.

Utah Code Ann. § 35–1–62.

Third, the Utah Liability Reform Act also provides for a jury to apportion the fault of "person[s] seeking recovery." *Id.* § 78–27–39. The Act defines "person seeking recovery" as "any person seeking damages or reimbursement on its own behalf, or on behalf of another for whom it is authorized to act as legal representative." *Id.* § 78–27–37(3). Thus, due to the reimbursement provision of the Workers' Compensation Act, employers (or their insurance carriers) may be legitimately viewed as persons seeking recovery under the Act.

Therefore, employers have a financial interest in the apportionment process. Because the legislature has expressly provided (1) that employers be given notice and an opportunity to appear and (2) that the jury may apportion the fault of persons seeking recovery, we believe that it is not procedurally unfair for a jury to apportion the fault of nonparty employers.

### C. Other Jurisdictions

Other states have dealt with the issue of how to apportion fault in workers' compensation third-party actions in a variety of ways. See Appendix for examples. Although these decisions involve somewhat different statutes, their reasoning may be helpful. For example, the California Court of Appeal recently ruled in a case substantially similar to the case at bar. *Mills v. MMM Carpets, Inc.*, 1 Cal.App.4th 83, 1 Cal.Rptr.2d 813 (1991), *review dismissed*, 10 Cal.Rptr.2d 635, 833 P.2d 642 (1992). In *Mills*, a bank employee sued various parties for damages because she was injured when the heel of her shoe punctured a section of carpeting that had been laid over an uncovered utility hole. The employer's insurer intervened, seeking indemnity for workers' compensation benefits it had paid to the plaintiff on behalf of the employer. The defendants claimed that under California's Fair Responsibility Act, the contributive fault of the employer should be considered in determining the proportionate share of each defendant's liability for noneconomic damages. California's Fair Responsibility Act provides in relevant part:

> In any action for personal injury, property damage, or wrongful death, based upon principles of comparative fault, the liability of each defendant for non-economic damages shall be several only and shall not be joint. *Each defendant shall be liable only for the amount of non-economic damages allocated to that de-*

*fendant in direct proportion to that defendant's percentage of fault,* and a separate judgment shall be rendered against that defendant for that amount. Cal.Civ.Code § 1431.2(a) (West Supp.1993) (emphasis added). The court, noting that the purpose of the Act was to abolish the inequity and injustice of joint and several liability, decided that excluding the plaintiff's employer from apportionment would "result [in] a form of joint liability which the statute is meant to avoid" and held that "the apportionment of liability ... must take into account the fault of all tortfeasors, whether or not they are named as defendants, [or] subject to liability for damages." 1 Cal.Rptr.2d at 814, 817. The court conceded that employers are "generally immune from tort liability" under California's workers' compensation law and noted in addition that the Fair Responsibility Act "is not intended, in any way, to alter the law of immunity." *Id.*, at 818. Nevertheless, creating a rule which it found consistent with both acts, the court explained that "the negligent employer's fault in a case like this one is measured, not in order to impose tort liability on it, but to determine the comparative fault and commensurate liability of a defendant in the action." *Id.*

We have applied similar reasoning in holding that Utah's Liability Reform Act requires a jury to apportion the fault of a plaintiff's employer even though the employer is immune from suit under Utah's Workers' Compensation Act.

## D. Equitable Considerations

■ Any judicial or legislative decision concerning tort liability requires a balancing of competing interests and a policy decision as to which party should bear the risks of an immune or insolvent tort-feasor. Prior to 1986, under joint and several liability, a tort-feasor bore the risk of paying not only his or her share of the plaintiff's damages, but also the shares of other tortfeasors who were impecunious or immune from suit. The 1986 Utah Liability Reform Act shifted the risks caused by impecunious or immune tort-feasors to the plaintiffs by abolishing joint and several liability and contribution among tort-feasors.

Plaintiff correctly asserts that if his employer's actions are included in apportionment, his recovery may be significantly reduced. Plaintiff's recovery from nonemployer defendants would be reduced directly in proportion to the percentage of fault, if any, the jury attributes to the employer.

On the other hand, in Trackmobile's view, fairness to the defendants requires that each defendant pay only its proportionate share of the plaintiff's damages. If the Scoular parties are not included in apportionment, Trackmobile and the other defendants would be liable for damages in excess of their proportion of fault. "There is nothing inherently fair about a defendant who is[, for example,] 10% at fault paying 100% of the loss...." *Brown v. Keill,* 224 Kan. 195, 580 P.2d 867, 874 (1978).

General comparative negligence theory also supports the inclusion of nonparty employers in apportionment. For example, according to Heft and Heft:

> It is accepted practice to include all tortfeasors in the apportionment question. This includes nonparties who may be unknown tortfeasors, phantom drivers, and persons alleged to be negligent but not liable in damages to the injured party such as in the third party cases arising in the workmen's compensation area.
>
> . . . .
>
> The reason for such rules is that true apportionment cannot be achieved unless that apportionment includes all tortfeasors guilty of causal negligence either causing or contributing to the occurrence in question, whether or not they are parties to the case.

Carroll R. Heft & C. James Heft, *Comparative Negligence Manual,* § 8.100, at 14 (John J. Palmer & Stephen M. Flanagan eds., rev. ed. 1992) (footnote omitted). Thus, it is accepted practice for the jury to apportion the comparative fault of all tort-

feasors when comparative negligence is at issue.[6]

Plaintiff also protests the detrimental effect on his recovery created by the employer reimbursement provisions of the Workers' Compensation Act. Section 35–1–62 provides for an employer or insurer to obtain reimbursement for any payments made to an injured employee. This lien is not reduced in any respect by the amount by which the employer's act or omission contributed to the employee's injuries. Thus, any judgment Sullivan wins against a party defendant will be reduced up to the amount the insurer in this case paid to Sullivan in workers' compensation benefits.

Consequently, when a verdict is granted to the plaintiff in an amount equal to or greater than the employer's workers' compensation payments, the Act allows an at-fault employer to escape liability altogether at the expense of the injured employee.[7] We agree with plaintiff that this result is inequitable, but the effect of the statutory language is clear.

However, "[w]here statutory language is plain and unambiguous," we will "not look beyond the same to divine legislative intent." *Brinkerhoff v. Forsyth*, 779 P.2d 685, 686 (Utah 1989). The language of section 35–1–62(2) is unambiguous on this point: "The person liable for compensation payments shall be reimbursed in full for *all* payments made [by a third party to an injured employee] less the proportionate share of costs and attorney's fees provided for in Subsection (1)." Utah Code Ann. § 35–1–62(2) (emphasis added). We are not free "to assess the wisdom of a statutory scheme." *West Jordan v. Morrison*, 656 P.2d 445, 446 (Utah 1982). Moreover, no challenge to the validity of the reimbursement provision of the Workers' Compensa-

tion Act is before this court at this time. Thus, plaintiff's remedy on this point is a legislative one.

## II. DISMISSED NONEMPLOYER DEFENDANTS

The remaining nonemployer defendants in the case are Utah Power & Light, Trackmobile, G.W. Van Keppel, Union Pacific Railroad, and Oregon Short Line Railroad. As noted above, the district court found that Denver & Rio Grande Western Railroad ("D & RG") had no legal duty to Sullivan and dismissed it from the lawsuit.

Trackmobile urges that all named defendants, including those dismissed from the proceeding, be included in apportionment. However, plaintiff argues that because the trial court dismissed D & RG, it is not a defendant and the jury may not consider its actions or omissions in the apportionment process. Plaintiff again relies heavily on the definitions of the Liability Reform Act for support. The relevant definitions of the Act provide:

(1) "Defendant" means any person not immune from suit who is claimed to be liable *because of fault* to any person seeking recovery.

(2) "Fault" means any *actionable* breach of legal duty, act, or omission proximately causing or contributing to injury or damages....

Utah Code Ann. § 78–27–37(1), (2) (1986) (emphasis added). Plaintiff asserts that the requirement that "fault" be "actionable" precludes the inclusion of D & RG in apportionment.

Plaintiff urges a definition of "actionable" fault that is too restrictive. An act

---

**6.** A solid majority of states in the Pacific region have adopted the practice of apportioning the fault of nonparties in negligence actions. These states have done so either expressly by statute or by judicial interpretation. In addition, several states allow consideration of nonparty negligence while retaining joint and several liability. See Appendix for a sampling of cases.

**7.** The Kansas Supreme Court recognized the inequity in allowing a partially negligent employer to recover full subrogation in *Negley v. Massey Ferguson, Inc.*, 229 Kan. 465, 625 P.2d 472,

475 (1981), but refused to reduce the employer's lien because "[t]he extent and nature of the subrogation rights of an employer under the workmen's compensation statutes are matters for legislative determination." *Id.* 625 P.2d at 476. To remedy this inequity, the Kansas Legislature amended its workers' compensation law to provide that the employer's subrogation interest "shall be diminished by the percentage of the damage award attributed to the negligence of the employer." Kan.Stat.Ann. § 44–504(d) (Supp.1990).

or omission may be actionable even if the plaintiff cannot, as a practical matter, secure a judgment against a defendant. *Black's* defines "actionable" as "[t]hat for which an action will lie, furnishing legal ground for an action." *Black's Law Dictionary* 29 (6th ed. 1990). A plaintiff may have legal grounds for a cause of action against a defendant, and the defendant may be dismissed due to, for example, the assertion of a successful affirmative defense. Thus, the Act's definition of "fault" does not necessarily preclude the apportionment of fault of nonparties.

Nevertheless, we hold that D & RG, which was dismissed pursuant to an adjudication on the merits, may not be included in apportionment. D & RG was dismissed due to a lack of fault as a matter of law. Thus, D & RG's exclusion will not subject remaining defendants to potential liability for damages in excess of their proportionate fault.

Trackmobile has also raised an equal protection argument under the state and federal constitutions. Because we have interpreted the statutes at issue to require that the jury apportion the fault of employers of plaintiffs in third-party workers' compensation litigation, this issue need not be reached.

Based on the foregoing analysis, our answers to the questions certified from the federal court are as follows:

1. A jury may apportion the fault of employers under Utah Code Ann. § 78–27–38 to –43 notwithstanding their immunity under Utah Code Ann. § 35–1–60.

2. A jury may not apportion the fault of a party that has been dismissed from the lawsuit pursuant to an adjudication on the merits of the liability issue.

HALL, C.J., and ZIMMERMAN, J., concur.

## APPENDIX

**Apportionment of Nonparty Fault in Negligence Actions in States Reported in the Pacific Reporter**

States that have expressly adopted this practice by statute include **Arizona**, Ariz.

Rev.Stat.Ann. § 12–2506.B (1991), *Dietz v. General Elec. Co.*, 169 Ariz. 505, 821 P.2d 166, 171 (1991) (including immune employers); **Colorado**, Colo.Rev.Stat. § 13–21–111.5(3)(a) (1987), *Williams v. White Mountain Constr. Co.*, 749 P.2d 423, 429 (Colo.1988) (same); **Kansas**, Kan.Stat.Ann. § 44–504(d) (1986 & Supp.1991), *Brabander v. Western Co-op. Elec.*, 248 Kan. 914, 811 P.2d 1216, 1219 (1991) (same); **New Mexico**, N.M. Stat.Ann. § 41–3A–1.B (1989), *Taylor v. Delgarno Transp., Inc.*, 100 N.M. 138, 667 P.2d 445, 448 (1983) (same), *overruled on other grounds, Montoya v. Akal Sec., Inc.*, 114 N.M. 354, 838 P.2d 971 (1992); **Washington**, Wash.Rev.Code Ann. § 4.22.070(1) (1988), *Clark v. Pacificorp*, 118 Wash.2d 167, 822 P.2d 162, 165 (1991) (same).

In other states, courts have interpreted general comparative negligence statutes to require apportionment of nonparty fault. **California**, Cal.Civ.Code § 1431.2(a) (West Supp.1993), *Mills v. MMM Carpets, Inc.*, 1 Cal.App.4th 83, 1 Cal.Rptr.2d 813, 814 (1991) (including immune employers), *review dismissed*, 10 Cal.Rptr.2d 635, 833 P.2d 642 (1992); **Hawaii**, Haw.Rev.Stat. § 663–31(b)(2) (1988), *Espaniola v. Cawdrey Mars Joint Venture*, 68 Haw. 171, 707 P.2d 365, 373 (1985) (same); **Idaho**, Idaho Code § 6–802 (1990), *Pocatello Indus. Park v. Steel W. Inc.*, 101 Idaho 783, 621 P.2d 399, 403 & n. 4 (1980), *Barringer v. State*, 111 Idaho 794, 727 P.2d 1222, 1224 (1986) (same); **Oklahoma**, Okla.Stat.Ann. tit. 23, § 13 (1987), *Bode v. Clark Equip. Co.*, 719 P.2d 824, 826–27 (Okla.1986) (same); **Wyoming**, Wyo.Stat. § 1–1–109 (1991), *Burton v. Fisher Controls Co.*, 723 P.2d 1214, 1221 (Wyo.1986) (including settling tort-feasors).

The following states retain joint and several liability but allow the consideration of nonparty negligence for the limited purpose of determining whether all or none of the total fault can be attributed to the nonparty. **Alaska**, Alaska Stat. § 09.17.-080 (1991), *Lake v. Construction Mach., Inc.*, 787 P.2d 1027, 1028, 1031 (Alaska 1990) (including immune employers); **Mon-**

tana, Mont.Code Ann. § 27–1–703(4) (1991) (expressly excluding immune employers).

In contrast, only two states flatly refuse to allow a jury to consider the fault of nonparties in apportionment. **Nevada,** Nev.Rev.Stat.Ann. § 41.141.2(b)(2) (1986), *Warmbrodt v. Blanchard,* 100 Nev. 703, 692 P.2d 1282, 1286 (1984); **Oregon,** Or. Rev.Stat. §§ 18.470, –.480 (1991), *Mills v. Brown,* 303 Or. 223, 735 P.2d 603, 605 (1987).

STEWART, Justice (dissenting):

The majority opinion holds that an immune non-defendant should be included in the apportionment of fault to defendants under the Liability Reform Act. I submit that the majority, in direct defiance of the specific language of the Act and its legislative history, completely reverses the intended effect of the Act as to how fault should be apportioned when one of the parties whose negligence contributed to the plaintiff's injuries is immune from liability.

In 1973, the Utah Legislature adopted the Comparative Negligence Act, which abolished contributory negligence as an absolute bar to an action but left intact the doctrine of joint and several liability. 1973 Utah Laws ch. 209. The Liability Reform Act, adopted in 1986, carried forward several provisions from the Comparative Negligence Act but dispensed with joint and several liability. 1986 Utah Laws ch. 199. Under the Act, fault is to be apportioned to each party, with each party bearing liability for its apportioned fault. No party is liable for fault apportioned to another party. Utah Code Ann. § 78–27–40.

The central issue in this lawsuit is how the Legislature intended to apportion the fault of a person immune from liability (a non-party) who is one of multiple tort-feasors causing a plaintiff's injuries. The Legislature specifically addressed and resolved that issue. The Act expressly provides that fault shall not be allocated to a party immune from liability. Section 78–27–39 states:

The trial court may, and when requested by any party, shall, direct the jury, if any, to find separate special verdicts determining the total amount of damages sustained and the percentage or proportion of fault attributable to each person seeking recovery and *to each defendant.* (Emphasis added.) Thus, fault is to be attributed *only* to "each person seeking recovery *and to each defendant."* The Act then defines the word "defendant" to specifically exclude persons who are immune from liability. Section 78–27–37 states:

As used in Sections 78–27–37 through 78–27–43:

(1) "Defendant" means *any person not immune from suit* who is claimed to be liable because of fault to any person seeking recovery.

(Emphasis added.) This section makes clear that *the term defendant does not include negligent persons who are immune from liability.* In short, the Legislature contemplated the issue at hand and expressly provided that fault is to be allocated only among non-immune parties to a lawsuit, even though an immune person may be partly responsible for the plaintiff's injuries.

Two other sections in the Act not only reinforce, but compel the same conclusion. Section 78–27–41 states that either a plaintiff or a defendant who is a party to the litigation

may join as parties any *defendants* who may have caused or contributed to the injury or damages for which recovery is sought, for the purpose of having determined their respective proportions of fault.

(Emphasis added.) In connection with that section, § 78–27–39 requires special verdicts, when requested, for determining the fault attributed to "each person seeking recovery and to each defendant." Both the joinder and special verdict provisions are specifically designed to provide the necessary mechanism for attributing fault only to non-immune defendants (as defined by the Act) and to plaintiffs. Thus, immune persons may not be joined in an action, § 78–27–41, nor may fault be attributed to them, § 78–27–39. The majority's self-de-

vised requirement that the fault of an immune party must be ascertained simply flouts these provisions.

The purpose of joinder is to determine the non-immune *defendants'* "respective proportions of *fault.*" § 78–27–41. The "fault" to be allocated is defined by § 78–27–37(2) as any *"actionable breach of legal duty* ... causing or contributing to injury or damages." (Emphasis added.) Because an immune party's negligence is not an "actionable breach of legal duty," that negligence cannot be apportioned. In short, an immune party, such as plaintiff's employer in this action, has not engaged in an "actionable breach of legal duty" and therefore is not subject to the special verdict apportionment procedure under the statute.

The Legislature could not have been more explicit and consistent in providing exactly how and to whom fault should be allocated. Indeed, the Legislature expressly rejected the position the majority adopts. Senate Bill 64, which became the Act in issue, initially provided:

> The trial court may, and when requested by any party shall, direct the jury, if any, to find separate jury verdicts determining the total amount of damage sustained and the percentage or proportion of fault attributable to each person seeking recovery, to each defendant, *and to each other person whose fault contributed to the injury or damages.*

(Emphasis added.) The Senate committee report shows that the italicized phrase was purposefully deleted. Left in, that phrase would have done exactly what the majority does today. The majority nevertheless dismisses this compelling piece of legislative history on the transparent ground that it is not clear why the language was deleted.

The Legislature consciously adopted a policy that excluded the negligence of non-immune persons from the fault apportionment process. Asserting that it would be unfair to make defendants bear the fault of an immune party, the majority simply sets aside the judgment of the Legislature as expressed in the explicit statutory language and imposes its own policy. What the majority fails to recognize is that the policy adopted by the Legislature divides the fault of an immune party among both *plaintiffs* and *defendants.* The policy adopted by the majority, on the other hand, loads that fault entirely onto a plaintiff.

The legislative policy is neither irrational nor inequitable. Practically speaking, a jury would naturally be inclined to allocate the fault of an immune person among both plaintiffs and defendants. If a plaintiff is 20% at fault, each of two named defendants is 30% at fault, and an immune person is 20% at fault, the Legislature could reasonably assume that a jury would allocate the immune person's 20% fault among the plaintiff and the defendants, probably according to their respective percentages of "actionable fault." Thus, there is no reason to assume, as the majority does, that the immune person's fault will be attributed solely to defendants under Utah's comparative negligence scheme.

The majority position will necessarily result in the entire amount of an immune person's fault being deducted from a plaintiff's damages. The blatant inequity of that position is especially acute when an immune employer's insurance company claims all or part of a plaintiff's recovery by way of subrogation under the Workers' Compensation Act.

The majority rejects clear and consistent statutory language and its compelling legislative history with the extraordinary argument that "failing to include immune employers in the apportionment violates the main purpose of the Act by improperly subjecting the remaining defendants to liability in excess of their proportion of fault." I see nothing improper in the legislative scheme. The fact is that it is for the Legislature—not this Court—to decide how to deal with the fault of an immune party in a multi-defendant comparative negligence case.

While it is true that the Act abolishes joint and several liability, that was not its sole purpose. The Act also provides the manner in which fault should be allocated in comparative negligence cases and how the universe of actionable fault should be apportioned when one party is immune.

As noted, even a plaintiff may be held responsible for a part of an immune person's negligence under the provisions of the Act. Defining the universe of fault, as the Legislature has done, is not, at bottom, an issue of joint and several liability. Rather, the process turns on the concepts underlying proximate cause.

The existence of fault has always depended upon whether the negligence of a party had a substantial causative connection to a plaintiff's injuries. Because the law requires only a substantial causative connection, a defendant or defendants may be held legally responsible for causing an injury, even though there are some actual causes for which the defendant or defendants are not responsible. But if a defendant's negligence is not a substantial cause of the plaintiff's injuries, then no liability may attach to that defendant. For this reason, proximate cause is defined in terms of substantial causative factors. That point is critical in the policy the Legislature adopted. If an immune person's negligence is great enough, a jury would be obliged to find that the named non-immune defendants did not proximately cause the injury, even if they were negligent, and thus deny the plaintiff any recovery. But if the immune person's negligence is not that great, a jury will have to determine the relative proportion of actionable fault attributable to the plaintiffs and the named defendants. In this process, the universe of fault to which the plaintiff and the defendants contributed is the universe of *actionable* fault.

The damage the majority does to the legislative scheme and to a plaintiff's rights is exacerbated by the provision in the Workers' Compensation Act that gives an employer (whose fault may have contributed to a plaintiff's injuries) a lien against the plaintiff's damage recovery for benefits paid out of workers' compensation. Thus, not only is the plaintiff made responsible for the employer's proportionate share of fault, but he must also reimburse his employer out of his diminished recovery for any workers' compensation benefits re-ceived. This is not only unjust and inequitable, but might well be unconstitutional.

HOWE, Associate C.J., does not participate herein.